AETNA LIFE & CASUALTY INSUR-
ANCE COMPANY, Appellant,

v.

Richard NUZUM, Appellee.

No. 8724.

Court of Civil Appeals of Texas,
Amarillo.

May 9, 1977.
Second Rehearing Denied June 6, 1977.

Woodfin C. Henderson, Dallas, for appellant.

R. L. Middleton, Jr., Dallas, for appellee.

## ON MOTION FOR REHEARING

ELLIS, Chief Justice.

Our opinion issued on March 31, 1977, is withdrawn, and the following opinion, issued subsequently to appellee's motion for rehearing, is substituted therefor:

Richard Nuzum brought this action to recover certain medical and hospital expenses under a group insurance policy issued by the defendant, Aetna Life & Casualty Insurance Company. The trial court, sitting without a jury, rendered judgment in Nuzum's favor. Within Aetna's single appellate point of error is the contention that there is no evidence to support the judgment. We agree. Reversed and rendered.

In January, 1974, Nuzum underwent surgery in connection with an ulcer condition. Aetna denied Nuzum's claim and this litigation was brought to determine whether the policy covered the expenses in connection with the surgery.

The insurance contract sued upon was a group policy issued to Arnold & Burch Corporation. It was stipulated that between August of 1973 and February of 1974 Nuzum was employed by that firm and during that period of time such firm was insured under a group policy of Major Medical and other insurance covering all its employees. It is uncontested that the effective date of coverage for the insurance contract in question was November 1, 1973, and that the medical expenses sought to be recovered are a result of surgery performed in January of 1974. The policy contained the following exclusionary clause:

"SPECIAL CONDITIONS:

Hospital Expenses and Other Medical Expenses incurred during the first twelve months that coverage for a family member is in force under this policy will not be included as Covered Medical Expenses if they are in connection with a disease or injury for which he received treatment or services or took prescribed drugs or medicines, during the three month period prior to the effective date of such coverage; provided however, that

\* \* \* \* \* \*

if the family member becomes eligible for coverage under this policy after its effective date, and was covered under the primary policy immediately prior to the date he becomes eligible for coverage under this policy, the foregoing terms of this paragraph shall apply only with respect to a disease or injury for which the family member received treatment or services or took prescribed drugs or medicines during the three month period prior to the effective date of coverage for him under the primary policy and only for the first twelve months the family member is insured under the primary policy and this policy."

Aetna properly pleaded this exclusion in its First Amended Original Answer.

The evidence reveals that Nuzum had a history of stomach ulcer and ulcer-related ailments. In 1968, while residing in California, Nuzum was diagnosed as having an ulcer and put on an ulcer diet. In September, 1972, he had a bleeding ulcer for which surgery was performed in Dallas, Texas by Doctor Morris J. Fogelman. On this occasion Doctor Fogelman surgically removed approximately sixty percent of Nuzum's stomach. On November 3, 1972, Nuzum saw Doctor Franklin Casey and related to him a fifteen year history of peptic ulcer condition. On this occasion he was diagnosed as having active hepatitis suspected to be secondary to a blood transfusion given to him in September, 1972. According to Doctor Casey, he got over the hepatitis and returned to work approximately December 15, 1972. He was next seen by Doctor Casey on May 22, 1973, for an ear infection, which according to Doctor Casey was after he had been working for about six months subsequent to his return to work after the hepatitis problem. Doctor Casey stated that on May 22, 1973, his liver functions were evaluated, the hepatitis condition checked and these "were essentially returned to almost normal at that particular point in time which was about eight months after the hepatitis episode, so that was over then."

On September 12, 1973, Nuzum was prompted to consult Doctor Casey by his experiencing dizziness, discolored stools and weakness. These are all recognized as symptoms of a bleeding ulcer. Tests also revealed that Nuzum was anemic—another symptom of a bleeding ulcer. Doctor Casey did not perform a full set of tests, but these symptoms, coupled with Nuzum's long history of ulcers, led him to diagnose Nuzum as having "a bleeding ulcer again." The doctor testified that he recommended that Nuzum go into the hospital, but he declined to do so. Nuzum denied that Doctor Casey advised him to go into the hospital. Doctor Casey prescribed antacids which he stated could stop the bleeding, and the patient was put on a bland diet. Nuzum admitted that the doctor prescribed antacids. Two days later, Nuzum returned feeling better. Although his hematocrit level still indicated anemia, he was no longer experiencing discolored stools. This last condition indicated that the bleeding, if any, had stopped, but

the proof adduced indicated that symptoms from ulcers come and go intermittently. Nuzum stated that prior to September 12, 1973, he had been taking doses of iron previously prescribed by Doctor Casey. Although Doctor Casey recognized that consumption of iron, as well as bleeding ulcers, can cause discolored stools, and that "any form of inflammation in your body, if you have hepatitis, or otherwise," may result in low hematocrit, he clearly testified that, as of the time here in question, it was his opinion, based on reasonable medical probability, the patient had a bleeding ulcer.

On January 25, 1974, Doctor Fogelman performed another operation on Nuzum for a bleeding ulcer condition. On this occasion he performed a vagotomy (i. e. cut the acid nerves in the stomach) and sutured the ulcer to prevent further bleeding. Aetna contends that it is not liable for the expenses of this operation under the provisions of the policy.

 It is well established that upon being sued on one of its policies, an insurance company can deny liability under any exclusion in the policy by pleading specifically the exclusion upon which it relies. Although the insurance company has the burden of pleading the exclusion, the plaintiff retains the burden of proving that his right to recover is not defeated by the exclusion pleaded. Tex.R.Civ.P. 94; *Shaver v. National Title & Abstract Co.*, 361 S.W.2d 867 (Tex.1962). Applied to this case, this rule operates to place upon Nuzum the burden of proving that he had not been treated for ulcers between August and November, 1973. Specifically, he had the burden to prove that the September 12, 1973, consultation with and treatment by Doctor Casey was not treatment or services received for or in connection with ulcers.

In this regard, it should be noted that Aetna was not required to prove that Nuzum was treated for ulcers on September 12, 1973. Instead, Nuzum had the burden of proving that he was not treated for ulcers at that time or took no prescribed drugs or medicines therefor during the three month period here involved. We do

not believe that it has been established that conditions unrelated to the ulcers caused the September, 1973 illness. The appellee's argument in that regard is based upon speculation and conjecture and not upon any evidence of probative force. *See Bass v. Fouts*, 400 S.W.2d 15 (Tex.Civ.App.—Texarkana 1966, writ ref'd n. r. e.). *Also see Joske v. Irvine*, 91 Tex. 574, 44 S.W. 1059 (1898). The only doctor who examined Nuzum during the three month period of time here involved was Dr. Franklin Casey who directly testified that in his opinion it was reasonably and medically probable that in September of 1973 the patient was suffering from a bleeding ulcer. He again stated such medical opinion on cross-examination.

Also, both doctors, Doctor Casey and Doctor Morris J. Fogelman, agreed that in January, 1974, Nuzum had peptic stomach ulcers and had a history of peptic stomach ulcers prior to that time. Both medical witnesses agreed that a bleeding ulcer can cause discoloration of the stools. Although Doctor Fogelman's testimony indicated that the patient's ulcer for which he operated in January, 1974, was an acute ulcer which may have been present for thirty days or less, both doctors testified that peptic stomach ulcers can go away, appear and reappear from time to time. In the light of the medical testimony and the long history of this patient's condition relating to ulcers, along with the background and circumstances of this case, we find only evidence of a conjectural and speculative nature, and no direct medical evidence, that conditions other than those which reasonably pertain to an ulcer condition were the cause of Nuzum's illness on September 12, 1973, and the treatment therefor.

 The appellee questions whether the alleged ulcer condition of September, 1973, was a "disease," and pointed out that Doctor Casey characterized the condition as a "syndrome." We note that a syndrome is defined as "a group of signs and symptoms that occur together and characterize a disease." See *Webster's New International Dictionary*, Second Edition, Unabridged, 1961. It is our opinion that the appellee did

not meet the burden of establishing by evidence of probative force that in September, 1973, he was not treated for an ulcer condition, which under a reasonable interpretation would be regarded as a disease—"ailment" or "illness" (see *Webster's New International Dictionary, supra*).

In view of the foregoing we have concluded that the appellee produced no evidence of probative force to negate the pleaded exclusion. To the extent that appellant's point of error presents the contention of no evidence to support the judgment, it is sustained. Accordingly, the judgment of the trial court is reversed and judgment rendered that the plaintiff take nothing by his suit.

The appellee's motion for rehearing is overruled.